anchored, she would be as liable to injury from ice as though there were no piers on either side. Such a construction of the clause in question would furnish no protection to the insurer whatever, and the exception which it made would be absurd and meaningless. It is manifest that such construction cannot obtain, as its effect would be to furnish no exemption at all from liability on account of ice, and evidently these parties did not contemplate that such were the terms of the contract. By a reasonable construction of the clause in question, it seems to have been intended that when the boat was tied up it should be so situated as to receive shelter from piers upon either side. The physical condition required that the boat should be protected upon one side as well as the other, for, as the tide flowed and ebbed, the boat would be subject to peril from one side or the other; and, when the tide flowed or ebbed upon the exposed side of the boat, a pier situated 2,200 feet away would furnish no protection whatever from such danger, and, if anchored midway between piers miles apart, no shelter to either side would be obtained. The primary purpose was to secure shelter for the boat when liability attached. Manifestly, such a condition was within reasonable contemplation, and, in order to secure it, it would be necessary that the piers be so contiguous to each other as to furnish such shelter to both sides of the boat. It is probably true that the distance which might separate the piers, and still furnish shelter, would be somewhat elastic, and be determined by existing conditions. A case may arise where a question of fact would be presented as to whether the piers between which the boat lay were within the contemplation of the policy, and reasonably furnished the protection for which the contract stipulated. Piers, however, so situated as to be useless in protection of the boat, are in no sense within the terms of this policy. In the present case there was no protection whatever against floating ice from the pier to the south of where the boat laid. Consequently at the time she received the injury she was not within the exception contained in the policy, and therefore no liability attached thereunder for the injury which she received.

· It follows from these views that the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.

(77 App. Div. 83.)

### FISK et al. v. FISK et al.

(Supreme Court, Appellate Division, First Department. December 5, 1902.)

1. PARTNERSHIP—DECEASE OF MEMBERS—RIGHT TO USE FIRM NAME.
    Though, where all the members of a firm die without having made any disposition of the right to use the firm name, that right does not pass to the personal representative of the last survivor, but dies with him, nevertheless such personal representatives, being entitled to the good will of the late firm, are entitled to an injunction restraining third persons from using the partnership name and pretending to be its successor.
    Van Brunt, P. J., and McLaughlin, J., dissenting.

Appeal from special term, New York county.

Action by Almira G. Fisk and another, as administrators of the estate of Henry G. Fisk, deceased, against Fisk, Clark & Flagg and

others. From a judgment dismissing the complaint, plaintiffs appeal. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Henry B. Kinghorn, for appellants.

Frank J. Dupignac, for respondents.

O'BRIEN, J. The principal contention before us was presented to this court on the former appeal from the order denying the plaintiffs' motion for a preliminary injunction, which order was affirmed in June, 1902, without opinion. Our view then was that the court at special term, upon the motion for the injunction, had correctly held that, "where all the partners entitled to use the firm name die or retire, and none of them had made any assignment or appointment of it, the right to use dies with the last survivor, and does not pass to his personal representatives." Fisk v. Fisk, Clark & Flagg, 37 Misc. Rep. 737, 76 N. Y. Supp. 482. Therein the facts and a discussion upon the law, particularly as to the construction of the statute (section 20 of the partnership law, Laws 1897, c. 420, and Gen. Laws, c. 51), are fully given, and need not be repeated. We did not, however, adopt the opinion in full, because, while there was sufficient to justify the denial of the motion for an injunction until such time as the case could be tried, there was a question involved which was not then discussed, nor does it appear to have been considered upon the trial, and which we think entitled the plaintiff to some relief. Upon such trial it was made clearly to appear that the defendants appropriated, and intended to use as their corporate title, the old firm name, and advertised, in effect, that they were to replace the old partnership of Fisk, Clark & Flagg. While the right to use the old firm name did not descend to and become a part of the estate of the last surviving partner, it will not be disputed that the property and good will of the business as well did so descend; and we think that any contemplated action of the defendants which tended illegally to injure the value of such good will should be enjoined, because an injury to a property right. The good will of a partnership includes, among other things, the trade-name to the extent that the purchaser may stand as the successor of the former firm. As said in 14 Am. & Eng. Enc. Law (2d Ed.) p. 1085:

"The good will of a trade or business may be defined as the advantage or benefit which is acquired by an establishment beyond the mere value of the capital stock, funds, or property employed therein in consequence of the general public patronage and encouragement which it receives from constant or habitual customers on account of its local position or common celebrity or reputation for skill, or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices."

Upon the death of the last survivor of the firm, therefore, although the statute makes no provision for the sale of the name, as such, by his administrators, and although that name in itself is not assignable by them, still the administrators may sell, in addition to the property and trade-marks, the good will of the firm, which shall include the right of the purchaser to advertise and hold himself out

to the public thereafter as being the successor to the property and business of the firm which has become extinct. As said in People v. Tioga Common Pleas, 19 Wend. 73: "Executors at law take everything belonging to their testator which can be considered as property, or form the subject of dealing in any way." And so, as to administrators, the policy of the law is that they should take everything, as far as possible, wearing the semblance of property of the intestate as part of the assets to pay debts. If the right to state that one has succeeded to the property and business of the firm has been rendered valuable, then it is as much a property right, to be sold by the administrators, as the goods which a merchant has in his store when he dies; and strangers who endeavor to illegally appropriate such a valuable right should be prevented from so doing by a court of equity. Nor does it make any difference whether the stealth of such a property right is done under the guise of a partnership, or through a corporation. Neither should be allowed without compensating the representatives of the deceased partner to appropriate a valuable part of the good will.

We have no wish to be understood as including in the good will the right to use the firm name in any other way than as an adjunct or addition to the purchaser's own firm name or title. What a purchaser of the good will acquires is the right to advertise or issue a statement showing that he has succeeded to the business of the firm, which, by the death of the last survivor, has become extinct. That this right is valuable, and that it can, in the present instance, be sold with the other property of the firm, appears; and the evidence equally establishes that its value will be impaired, if not destroyed, by the defendants' appropriation of the old firm name as their corporate title, and advertising themselves to the public as the successors of the old firm. That many of the former customers would thus be induced to deal with the new corporation, and that confusion in the public mind would result as to who had succeeded to the property and business of the old firm, is certain from the evidence, which shows that letters intended for such successors were sent, owing to the name assumed by the defendants, and their advertisements and circulars, to the corporation which they had created. The advantage which would accrue to any one buying the assets of the partnership from being able to truthfully represent that he had succeeded to the business of the old firm is thus made apparent, and this would be impaired, if not destroyed, should the defendants be permitted to appropriate the old firm name. The effect of permitting them to use such name will be to diminish the value of this right or privilege, which, in connection with the other property of the business, could be sold; and we think that it is competent for a court of equity to prevent such injury and wrong. This wrong or injury is quite separate and apart from that which would be inflicted upon the public, who would naturally be deceived and misled into believing that they were dealing with persons connected in some legal way with the old firm. It may be that plaintiffs have no standing to prevent such a wrong, except in connection with some relief to which they are directly entitled. The injury complained of

in this action is that of taking away wrongfully, and without compensation to the estate, the value of the good will of the business, by interfering with the use of the old trade-name by the purchaser, as successor to the old firm. It appears from the evidence that the scheme of the defendants has so far been successful, and that negotiations for the sale of the good will of the firm have come to an end. We think applicable what was said in Peck Bros. & Co. v. Peck Bros. Co., 113 Fed. 291, 51 C. C. A. 251, where a new corporation attempted to use the name of one, which had become embarrassed, and was in the hands of a receiver,—that:

"The name assumed was voluntarily selected, and, as we must believe, for the purpose of appropriating the good will and trade-name of another. If not originally so designed, it is clear that upon failure to procure the right by purchase the name was afterwards used for the purpose of misleading the public, and appropriating to itself, without right, the valuable trade-name of another. The wrong has been effected. Further wrong should be prevented. The remedy, if the defendants be honest, is simple. They have but, under the law, to change the name which they selected, and which has wrought the injury. In any event, they should be enjoined from further perpetration of the wrong."

We think, therefore, that the plaintiff in this case is entitled to relief directing that the defendants be restrained from making further use of the name of the old firm as part of their corporate title, thus giving to the administrators the benefit and value that will accrue from their ability to confer on the purchaser of the good will the right to use the name in conjunction with the statement that such purchaser is the successor to the business of the old firm.

The judgment accordingly should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

PATTERSON and LAUGHLIN, JJ., concur. VAN BRUNT, P. J., and McLAUGHLIN, J., dissent.