(156 App. Div. 577.)

METROPOLITAN TELEPHONE & TELEGRAPH CO. et al. v. METROPOLITAN TELEPHONE & TELEGRAPH CO. et al.

(Supreme Court, Appellate Division, First Department. May 9, 1913.)

1. CORPORATIONS (§ 49*)—NAME—ACTIONS—RIGHT TO SUE—"EXTINGUISHED ENTITY."

A corporation, which had transferred all of its property and franchises, except the franchise to be a corporation, to another company, and had voluntarily dissolved, but which had bonds outstanding on which it was still liable, and which therefore, under the express provisions of General Corporation Law (Consol. Laws 1909, c. 23) § 221, was still in existence for the purpose of paying its debts, had a sufficient interest in its corporate name to maintain an action to restrain another corporation from using such name; it not being an "extinguished entity," as claimed, although it had ceased to do business.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 137; Dec. Dig. § 49.*]

2. CORPORATIONS (§ 49*)—NAME—ACTIONS—PERSONS ENTITLED TO SUE.

The holders of bonds of a dissolved corporation, the payment of which was guaranteed by the purchaser of such corporation's property and franchises, and which had a high market price, had such an interest in the corporate name of the original corporation as entitled them to maintain an action to enjoin the use of such name by another corporation, which was issuing bonds in such name, similar in purport and appearance to those held by plaintiffs, without assets or business to make them valuable, since the resulting confusion would have a tendency to destroy the market and depreciate the market value of plaintiff's bonds.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 137; Dec. Dig. § 49.*]

3. CORPORATIONS (§ 589*)—SALE—RIGHTS OF PARTIES.

A corporation which purchased all the property and franchises of another, except its franchise to be a corporation, acquired its good will, and with it the right to use its name in such manner as to indicate that it was the successor of the corporation whose business and good will it had purchased.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2354–2360; Dec. Dig. § 589.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. CORPORATIONS (§ 49*)—CORPORATE NAME—ACTIONS—PERSONS ENTITLED TO SUE.

A corporation which had purchased all the property and franchises of another, and thereby acquired its good will and the right to use its name in such manner as to indicate that it was the successor of such other corporation, and which had guaranteed the payment of the bonds of the other corporation, had an interest in the corporate name of such other corporation, entitling it to sue to enjoin the use of such name by another corporation, although it had never made use of such name.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 137; Dec. Dig. § 49.*]

5. CORPORATIONS (§ 49*)—CORPORATE NAME—USE OF NAME SIMILAR TO NAMES OF OTHERS.

A telephone and telegraph corporation, which did no business and was apparently organized for the purpose of issuing securities as a subsidiary or auxiliary of a company proposing to build a projected telegraph line, would be enjoined from using the name of a dissolved corporation which was not descriptive of its business, and which apparently was adopted for the purpose of misleading investors to believe that its bonds were those of the original company, which had a high market value, not only to protect the dissolved corporation, its bondholders, and its successor in business, but to prevent a fraud on the public, even though it was not competing in business with the dissolved corporation or its successor.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 137; Dec. Dig. § 49.*]

Dowling, J., dissenting.

Appeal from Special Term, New York County.

Action by the Metropolitan Telephone & Telegraph Company and others against the Metropolitan Telephone & Telegraph Company and another. From an order denying an injunction pendente lite, plaintiffs appeal. Reversed, and injunction granted.

The opinion of Justice Greenbaum at Special Term was as follows:

This is a motion for an ad interim injunction to restrain the defendant Metropolitan Telephone & Telegraph Company of Delaware from using its corporate name within the state of New York, and to restrain the defendant Metropolitan Telephone & Telegraph Company from using its corporate name. The plaintiffs are the Metropolitan Telephone & Telegraph Company, the directors and trustees of said company, one Ford Huntington, a bondholder and bond owner of said company, suing on his own behalf and on behalf of all other bondholders similarly situated, and the New York Telephone Company. The plaintiff Metropolitan Telephone & Telegraph Company was organized in 1880 under the laws of the state of New York for the purpose of carrying on a telephone business in the city of New York. It actively carried on its business until the year 1896, when it transferred all its assets, including its good will, except its corporate·franchise, to the plaintiff New York Telephone Company. On August 8, 1896, it was dissolved, pursuant to voluntary proceedings for dissolution taken under the statute, and since that date has ceased to transact any business. The individual plaintiffs, who are described as directors and trustees of the Metropolitan Telephone & Telegraph Company, are the sole surviving directors and trustees of said company when the dissolution proceedings were taken, and who under the statute in relation to the voluntary dissolution of corporations are authorized to wind up its business and affairs. The defendant the Metropolitan Telephone & Telegraph Company, a Delaware corporation, was organized on July 8, 1912, pursuant to the law of Delaware, and the other defendant of the same name was organized on August 26, 1912, pursuant to the laws of this state.

It appears that in 1888 the plaintiff Metropolitan Company made an issue of bonds of the par value of $2,000,000, secured by a mortgage upon all its property, and that of the bonds thus issued $1,577,000 thereof are still outstanding and will mature on May 1, 1918, and that, upon the acquisition of the assets of the plaintiff Metropolitan Company in 1896 by the New York Telephone Company, the latter corporation assumed the liabilities of the Metropolitan Company, including the said bonds. Since 1896 the New York Telephone Company has carried on the telephone business theretofore conducted by the Metropolitan Company. It is alleged that the said plaintiff the Metropolitan Telephone & Telegraph Company so managed its business that it acquired a high reputation with the public as a telephone company, and that the defendants have fraudulently adopted the name of said corporation in order to mislead and deceive the public into believing that each of them was the plaintiff the Metropolitan Telephone & Telegraph Company, and "to cheat and defraud the public by passing off and selling the bonds and stocks of the defendants, which were and are of little or no value, as those of the plaintiff the Metropolitan Telephone & Telegraph Company." It is further alleged "that the acts of said defendants as aforesaid have caused confusion and mistakes, and have a tendency so to do, on the part of the public and prospective purchasers of bonds, between them and the plaintiff the Metropolitan Telephone & Telegraph Company, have injured its reputation and good will, and have embarrassed and obstructed it and the other plaintiffs, and, if persisted in, will do grievous injury to the plaintiff the Metropolitan Telephone & Telegraph Company and the other plaintiffs who are interested in the preservation of its property, business, name and reputation." Such substantially are the allegations upon which plaintiffs rest their prayer for injunctive relief.

It will now be in order to inquire into the standing of the several plaintiffs to maintain this action. The plaintiff Huntington, the holder and owner of some of the bonds of the dissolved corporation, clearly has no cause of action, for the reason that he could not in any event maintain an action without alleging a demand upon the trustee of the mortgage bonds to bring the action and his refusal so to do, and without making said trustee a party defendant. Western R. R. v. Nolan, 48 N. Y. 513. But, aside from this defect, and assuming, without holding, that if the alleged acts of the defendant tended to impair the security of the bondholders of the value of their bonds a right of action would accrue in favor of the bondholders or the trustees, there are no allegations of impairment, and therefore no cause of action stated. Nor do I think that the plaintiff the Metropolitan Telephone & Telegraph Company has stated a cause of action. It is an extinguished entity, whose estate, if any, is to be administered by its surviving directors and trustees "for the purpose of paying, satisfying, and discharging any existing debts or obligations, collecting and distributing its assets, and doing all other acts required in order to adjust and wind up its business and affairs, and may sue and be sued for the purpose of enforcing such debts or obligations until its business and affairs are fully adjusted, and wound up." Laws 1896, c. 932. This plaintiff nowhere alleges that the acts of the defendants in any manner interfere with the winding up of its affairs. It has no assets, it has not corporate life to undertake any new business, and defendant's assumption of its corporate name cannot even be regarded as a libel upon the deceased corporation. The cases cited in behalf of the plaintiffs, that a corporation that has gone out of business may restrain the use of its name by another corporation, has no application to the facts of this case. Armington v. Palmer, 21 R. I. 109, 42 Atl. 308, 43 L. R. A. 95, 79 Am. St. Rep. 786, and Peck Bros. & Co. v. Peck Bros. Co., 113 Fed. 291, 51 C. C. A. 251, 62 L. R. A. 81, were not cases of dissolved, but embarrassed, corporations, whose corporate life had not yet been extinguished. With respect to the plaintiffs designated as surviving directors and trustees of the Metropolitan Telephone & Telegraph Company, it suffices to say that, if the nonexistent corporation that they represent has no suable grievance against the defendants, there is no claim for them to assert.

Coming to the remaining plaintiff, the New York Telephone Company, we find that it acquired all the assets of the former Metropolitan Company and its good will and assumed its bond obligations. It is not contended that the New York Telephone Company acquired the franchise of the Metropolitan Telephone & Telegraph Company, which it might have done under section 58 of chapter 932 of the Laws of 1896. It is not even alleged that it conducted its business as the "successor of the Metropolitan Telephone & Telegraph Company." Under the circumstances it is not apparent precisely what the New York Telephone Company acquired under the "good will," unless it may have been the customers of the former company. The good will could not carry with it the right to do business under the corporate name of the former company, and if it carried with it the right to use the old corporate name as a trade-name, it is not alleged that it was thus ever used. There is no allegation of any interference by the defendants with any trade-name or right exclusively belonging to the New York Telephone Company. There is no claim that the latter company has ever made any use of the name of the Metropolitan Telephone & Telegraph Company for business purposes during the past 17 years, or that its subscribers have transacted business with it and known it by that name. The only allegations of supposed injury to some or all of the plaintiffs are that the former Metropolitan Telephone & Telegraph Company is injured "in its reputation and good will," and that defendants have embarrassed and obstructed it and the other plaintiffs, to their grievous injury, and that the public will be defrauded and cheated by the defendants' sale of their alleged worthless bonds, in the belief that they are purchasing bonds of the plaintiff Metropolitan Telephone & Telegraph Company. There are no allegations that any one has as yet thus been deceived, and the seemingly admitted fact seems to be that the total sales of the old bonds on the New York Stock Exchange for the five years preceding this action amounted to 33, of which 14 were sold after the incorporation of the defendants. It is thus evident that there is no active sale of these bonds, that they are not speculative bonds and in all likelihood are generally held as investments, and there is no probability of confusion or deception on the part of the holders and owners of these bonds. Aside, however, from the generalities alleged in the moving papers, it is not shown how the New York Telephone Company is affected by any deception that may be practiced by the defendants upon the investing public in its attempt to sell bonds. Such matters are of no concern to this plaintiff and give it no standing in this action.

Motion denied, with $10 costs.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Edmund L. Mooney, Charles T. Russell, and Frederick A. Card, all of New York City, for appellants.

Lewis Squiers, of New York City, for respondents.

SCOTT, J. The purpose of this action is to restrain the defendants and each of them from continuing to use the corporate name which they have selected, and under which they are now assuming to do business. Although there are two defendants bearing the same name, they are for all practical purposes identical, so far as concerns their composition, their purposes, and the means adopted to further their aims. The only difference is that their promoters, for some obscure reason, have seen fit to incorporate in two states, and thus have created technically two legal entities, where, so far as appears, one would have answered every legitimate purpose.

The corporation known as the Metropolitan Telephone & Telegraph Company, and joined as a plaintiff in this action, was duly incorporated under the laws of the state of New York in the year 1880 for the purpose of carrying on the telephone business in the city of New York. It did carry on this business until the year 1896, during which time it was the only company carrying on that business in said city, and succeeded in building up a very considerable business, thereby acquiring a good reputation and accumulating a large amount of valuable property. In the year 1896 it instituted proceedings for a voluntary dissolution pursuant to the provisions of law, and as an incident thereof transferred to the plaintiff New York Telephone Company all of its assets, business, property rights, privileges, and franchises of every kind and sort, except its franchise to be a corporation. The New York Telephone Company thereafter carried on and now carries on the same business formerly carried on by the Metropolitan Company, using so far as available the property and assets assigned by the latter company. In the course of its business the Metropolitan Telephone & Telegraph Company issued bonds to the extent of $2,-000,000, of which $1,577,000 are still outstanding and will not mature until the year 1916. These bonds have proven to be a profitable and desirable investment, having sold as high as 15 per cent. above par, although they are apparently offered for sale very infrequently. The New York Telephone Company has assumed the payment of these bonds, but so far as concerns their holders the original issuer also remains liable thereon. The plaintiff Ford Huntington is the owner and holder of some of these bonds, and sues in his own behalf and in behalf of others similarly situated. The other individual plaintiffs were directors and trustees of the plaintiff Metropolitan Telephone & Telegraph Company at the time of its voluntary dissolution, and under the statute to be hereinafter referred to remain trustees, charged with certain duties and responsibilities.

One of the defendants was organized under the laws of the state of Delaware on July 8, 1912, and the other was organized under the laws of the state of New York on the 26th of August, 1912. Both adopted the name of Metropolitan Telephone & Telegraph Company, not because it is descriptive of any business they propose to carry on, but evidently because they hoped to gain an advantage from the reputation which had been gained by the original company of the same name which is joined as a plaintiff in this action. The main promoter of the defendant companies, being president of one and vice president of the other, has stated very frankly the reason for incorporating a company in New York. He says:

"We organized this corporation [the Metropolitan Telephone & Telegraph Company] for the simple purpose of sequestrating the name in the state of New York; that was the main object."

And apparently the only function which the defendant company organized in New York has performed or is intended to perform is to hold onto the name, and, if possible, to prevent the plaintiff New York

Telephone Company from making any use of it.   The defendant organized in the state of Delaware has apparently engaged in no business in this state or elsewhere, except that it has issued bonds, of very uncertain and problematical value, being based rather upon hopes for the future than upon any tangible security in præsenti, some of which bonds it has already disposed of.   These bonds purport to be issued by the Metropolitan Telephone & Telegraph Company, and are in such form that they might easily be mistaken for the bonds issued by the plaintiff corporation of that name.

The answers, which are practically identical in form, do not substantially controvert any of the foregoing statements, except that they deny any wrongful intent in the adoption by said defendants of the name under which they have incorporated.   The principal argument urged in behalf of the defendants is that the original Metropolitan Telephone & Telegraph Company, having been voluntarily dissolved, had become an "extinguished entity," and had thereby lost whatever exclusive right it ever had to the use of the name under which it had been incorporated.   Hence, it is argued, that name became freed from any prior claim, and was open to selection by whomsoever might first readopt it as a corporate name.

It may be remarked, in passing, that it is not strictly accurate to denominate the original Metropolitan Telephone & Telegraph Company as an "extinguished entity."   Notwithstanding its formal dissolution, it continued in existence "for the purpose of paying, satisfying, and discharging any existing debts or obligations, collecting and distributing its assets, and doing all other acts required in order to adjust and wind up its business and affairs, and may sue and be sued for the purpose of enforcing such debts or obligations, until its business and affairs are fully adjusted and wound up" (Laws 1896, c. 932, now General Corporation Law [Consol. Laws 1909, c. 23] § 221, subdiv. 3).   Since said company has still outstanding more than $1,500,000 upon which it is potentially liable, it cannot be said that its business and affairs are fully adjusted and wound up, or that it is strictly speaking, an "extinguished entity."

Upon the foregoing facts, the question whether the defendants' continued use of the name which they have selected should be enjoined suggests two questions:   First. Whether any of the plaintiffs have an interest in protecting the name Metropolitan Telephone & Telegraph Company;   for, if any one plaintiff has such an interest, it will suffice upon this application for a temporary injunction.   Second. Should the defendants be enjoined from continuing to use the name?

[1] The original Metropolitan Telephone & Telegraph Company apparently has sufficient interest to maintain the action until it shall finally become in fact and in law an "extinguished entity," notwithstanding it has ceased to engage in the telephone business.   Armington v. Palmer, 21 R. I. 109, 42 Atl. 308, 43 L. R. A. 95, 79 Am. St. Rep. 786;  Peck Bros. & Co. v. Peck Bros. Co., 113 Fed. 291,

51 C. C. A. 251, 62 L. R. A. 81; Holmes, Booth & Hayden v. Holmes, Booth & Atwood Mfg. Co., 37 Conn. 278, 9 Am. Rep. 324.

[2] The holders of the bonds of the original company, represented by the plaintiff Huntington, may also be said to be interested in preventing the defendants or either of them from issuing other bonds, so similar to the bonds already issued by the plaintiff corporation as to create confusion among possible investors. As has already been said, the bonds issued by the plaintiff corporation are guaranteed by a strong going concern and command a high price in the market. The bonds already issued and proposed to be issued by one of the defendant corporations are so similar in purport and appearance to those issued by the original corporation as to be not easily distinguished, and have behind them nothing, so far as appears, except the promise to pay of a corporation having neither assets nor business. It would seem to be almost inevitable that the confusion resulting from the adoption by one of the defendants of the name of the original corporation, and the issue of bonds under such name, would tend to discourage investors from buying any bonds of either issue, lest by inadvertence they might receive bonds of the new company, instead of those issued by the original company. This confusion would have a direct tendency to destroy the market for the bonds of the original company, and thus depreciate their market value.

[3, 4] But, if it be considered that the interests of the plaintiffs already mentioned are too remote and unsubstantial to justify the interposition of a court of equity, the plaintiff New York Telephone Company stands in a much stronger position. It is alleged, and not disputed, that the New York Telephone Company acquired all the assets, business, property rights, privileges, and franchises of the plaintiff Metropolitan Telephone & Telegraph Company, except its franchise to be a corporation. If this be so, it acquired the good will of the last-named corporation; and this, according to the rule now well established, carried with it the right to use the name of the assignor corporation in connection with its own, in such manner as to indicate that it is the successor of the corporation whose business and good will it has purchased. Fisk v. Fisk, Clark & Flagg, 77 App. Div. 83, 79 N. Y. Supp. 37; Slater v. Slater, 175 N. Y. 143, 67 N. E. 224, 61 L. R. A. 796, 96 Am. St. Rep. 605. It is of no moment, as we consider, that the New York Telephone Company has not, as yet, found it necessary or considered it advisable so to use the name of its assignor, the Metropolitan Telephone & Telegraph Company. The point is that it acquired, and has never relinquished, the right so to use it. Until some one attempted, as these defendants have now attempted, to appropriate the name, the corporation rightfully entitled to use it was not called upon to assert its right, and its failure to do so should not be attributed to an intention to relinquish it. We are therefore of the opinion that the New York Telephone Company, in any event, has sufficient interest in and right of proprietorship to the name Metropolitan Telephone & Telegraph Company to resort to equity for protection. The neglect to carry on business for a number of years, as it has been held,

does not prevent a party from resuming his trade-mark or sign of his good will, nor entitle another to use it. Glen & Hall Mfg. Co. v. Hall, 61 N. Y. 226, 19 Am. Rep. 278.

[5] Assuming that it has such right, we think that there can be no doubt that its prayer for an injunction pendente lite should be granted. The motion papers do not disclose, and we are unable to conceive of, any reason, except a fraudulent and reprehensible one, for the adoption by defendants of the name under which they have severally incorporated. The name is not fairly descriptive of any business in which they are engaged or propose to engage. They in fact do no business, and are apparently organized only for the purpose of issuing securities as subsidiaries or auxiliaries of a company proposing to build a projected line of telegraph between the city of New York and the city of Chicago. Any other name would have served any honest purpose equally well, and many could be thought of which would be more descriptive of the declared purposes of organization. Reference has already been made to the fact that one of the defendants has issued and sold bonds, resembling in nearly every particular those already issued by the plaintiff Metropolitan Telephone & Telegraph Company. In the absence of any other plausible or apparently innocent reason for the appropriation of the name of the original company, we are forced to the conclusion that a real reason is the hope that unwary investors may be induced to purchase bonds of the new company in the belief that they are procuring bonds of the original company, and thus pay a high price for securities which are intrinsically of little value. If such was not the reason for the adoption of this particular name, and the defendants are content to sell their securities upon their own merits, they can easily adopt a name which will avoid any confusion. That they have not done so is the strongest evidence of their lack of good faith. The case, therefore, presents strong reasons for the interposition of equity, not only to redress the wrong done to the plaintiffs, or some of them, but to prevent a continuation of a palpable fraud upon the public.

It is of no moment that defendants are not at present competing for business with either of the corporations plaintiff. Injunction to prevent the misappropriation of established corporate names are not limited to business corporations. They have been issued to protect the use of the name of a fraternal benevolent society (B. P. O. Elks v. Improved B. P. O. Elks, 205 N. Y. 459, 98 N. E. 756); a patriotic society (Society of War of 1812 v. Society of War of 1812 in the State of New York, 46 App. Div. 568, 62 N. Y. Supp. 355); and a charitable society (Salvation Army in the U. S. v. American Salvation Army, 135 App. Div. 268, 120 N. Y. Supp. 471). As was pointed out by the Court of Appeals in the case first above cited, the public policy of the state, as evidenced by its statutes and the decisions of the courts, forbids the use of misleading names by corporations of any character.

We are therefore of the opinion that, upon the facts as disclosed in the papers before us, the continued use of the name Metropolitan

Telephone & Telegraph Company, in this state, by the defendants, should be enjoined pendente lite.

The order appealed from will therefore be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs.

INGRAHAM, P. J., and CLARKE and HOTCHKISS, JJ., concur. DOWLING, J., dissents, upon the opinion of Mr. Justice Greenbaum at Special Term.