JAMES VAN DYK CO. et al. v. F. V. REILLY CO. et al.

(Supreme Court, Special Term, New York County.   July, 1911.)

1. BANKRUPTCY (§ 268*)—SALE OR TRANSFER OF BUSINESS—GOOD WILL.
   The good will of a business is transferable in bankruptcy proceedings, though such transfer does not prevent the former owner from competing with the transferee exactly as if he were a stranger.
   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 268.*]

2. GOOD WILL (§ 2*)—USE OF NAME.
   The name and style under which a partnership business has been conducted is a part of the good will.
   [Ed. Note.—For other cases, see Good Will, Cent. Dig. § 1; Dec. Dig. § 2.*]

3. BANKRUPTCY (§ 268*)—SALE OF BUSINESS—GOOD WILL—USE OF NAME.
   Where a business which was carried on under the name of the owner was, together with the good will, sold in bankruptcy proceedings, the owner may again carry on a like business under his own name.
   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 268.*]

4. BANKRUPTCY (§ 268*)—SALE OF BUSINESS—USE OF NAME.
   Where the business of a bankrupt tea company was sold, together with the good will and right to use the name, the purchaser may use the name of the original company; it appearing that the name represents no personal skill.
   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 268.*]

5. BANKRUPTCY (§ 268*)—SALE OF BUSINESS—GOOD WILL—USE OF NAME.
   Where three of a long chain of stores owned by a bankrupt tea company were sold, together with the good will of the stores, except the right to use the name of the bankrupt company, the exception is valid, and the right to use the old location passes to the purchaser with the probability that the old customers will resort to the old place which constitutes the good will of the business.
   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 268.*]

6. TRADE-MARKS AND TRADE-NAMES (§ 64*)—USE OF NAME—INFRINGEMENT.
   Where a company purchased the business and good will of a bankrupt tea company, together with the right to use its name, which name was that of an individual, a third person, who organized a tea company under the same name and hired the old servants and managers of the bankrupt company, unlawfully infringed the right of the purchaser.
   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 64.*]

7. TRADE-MARKS AND TRADE-NAMES (§ 85*)—GROUNDS FOR RELIEF.
   Plaintiff purchased the business of a bankrupt tea company, together with the right to use its name. Up to a time shortly before the bankruptcy, the defendant had been manager of the bankrupt tea company and had seen to the preparation of its products. *Held*, that the plaintiff's use of the name of the bankrupt tea company to advertise its goods was not a fraud on the public, even though defendant did not mix the teas and the grades of the goods had been changed since the purchase, and hence plaintiff was entitled to an injunction to prevent another person from infringing its right to use the name of the bankrupt tea company.
   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 94; Dec. Dig. § 85.*]

8. GOOD WILL (§ 6*)—SALES—USE OF NAME.
   A company, which bought the business of a bankrupt tea company, together with the right to use its name, is entitled to protection in that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

right, even though it does not carry on its entire business in the name of the bankrupt tea company.

[Ed. Note.—For other cases, see Good Will, Cent. Dig. § 3; Dec. Dig. § 6.*]

9. TRADE-MARKS AND TRADE-NAMES (§ 84*)—SALES—RIGHT TO USE OF NAME— DEFENSES.

It is no defense to an action for infringement of the right to use the name acquired by a purchaser of a bankrupt tea company that plaintiff agreed to sell defendant part of the business but failed to keep his bargain.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 93, 97; Dec. Dig. § 84.*]

Action by the James Van Dyk Company and another against the F. V. Reilly Company and others. Injunction granted.

Sullivan, Bagley & Wechter, for plaintiffs.

James Herbert (Wilson E. Tipple, of counsel), for defendants.

LEHMAN, J. On the 27th day of August, 1908, the receiver in bankruptcy of the corporation known as the R. B. Reilly Company sold the 21 stores of the bankrupt company, together with and including all the right, title, and interest of said receiver of said alleged bankrupt in the leases to each and every of said stores and in the good will and name of said Robert B. Reilly Company as connected with said business hereby sold and with each and every of said stores and stands. The plaintiffs claim that they are respectively the lessee and owner of mesne assignments of the good will of the bankrupt company. They claim that the defendants have induced the public to believe that in dealing with the F. V. Reilly Tea Company they are dealing with the Robert B. Reilly Company or its successor, and thereby interfering with the good will which belongs to the plaintiff, and they seek an injunction against these acts and damages for the injuries already suffered. It appears that, for many years prior to his death in the year 1906, Robert B. Reilly was engaged in the tea business. His business was conducted for some years under the name of C. E. Reilly, his brother; then under the name of Robert B. Reilly; and after 1900 by a corporation known as the Robert B. Reilly Company, of which he was president. For many years the defendant Herbert St. Clair Heroy was in his employ and in the employ of the corporation. There seems to be no dispute that Heroy was the active manager and had sole charge of all the details of the business, and under his management the business developed and increased until, instead of having only one small office over a saloon, it conducted 21 retail stores. During this period it advertised very largely, and, though the business was conducted under the name of Robert B. Reilly and the Robert B. Reilly Company, it advertised its products as "Reilly's" teas and "Reilly's" coffees; and I find that the word "Reilly's" was used as the trade-name of Robert B. Reilly and the Robert B. Reilly Company. About the time of Robert B. Reilly's death, dissensions arose in the corporation, and the defendant Heroy was deposed from the management on October 30, 1907. The corporation went into bankruptcy in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the summer of 1908, and its assets and good will were sold to the James Van Dyk Company, and title is now vested in the plaintiffs, except as to three stores which were transferred to E. M. Osborne & Co., the name under which the defendant Osborne is doing business. As soon as the defendant Heroy was deposed from the management, he organized a new corporation known as the F. V. Reilly Company, and that corporation has, both prior and subsequent to the sale in bankruptcy, advertised its products as "Reilly's" teas and coffees in stores owned by it, and subsequent to the bankruptcy in the three stores owned by the defendant Osborne.

The case presents three questions: (1) Have the plaintiffs the sole and exclusive right to the name "Reilly's"? (2) Have the defendants wrongfully infringed the right? (3) Do the plaintiffs come into equity with clean hands?

[1] The courts in this state recognize a distinction in the rights obtained by a voluntary conveyance of the good will of a business and those obtained by a forced sale as in bankruptcy. There is, however, no doubt that the good will of a business in its narrow sense is transferable in bankruptcy proceedings. Von Bremen v. MacMonnies, 200 N. Y. 41, 51, 93 N. E. 186. A somewhat careful examination of the authorities would seem to show that the real distinction between the rights transferred is that a voluntary transfer of the good will estops the transferror from interfering by his own acts with the value of the good will transferred, while in the case of a transfer in invitum the former owner of the good will may compete with the transferee exactly as if he were a stranger. As far as third parties are concerned, a transfer of the good will of a business upon a forced sale confers practically the same rights as a voluntary transfer.

[2] The name and style under which a business has been conducted by a partnership firm for a long series of years necessarily become attached to and part of the good will and is inseparable from it. Slater v. Slater, 175 N. Y. 143, 148, 67 N. E. 224, 61 L. R. A. 796, 96 Am. St. Rep. 605. I see no distinction between the name under which a partnership has conducted its business and the name under which a corporation has conducted its business; both have voluntarily selected a name under which to conduct their business, and, when that name has become attached to the business, it passes as part of the good will upon either a voluntary or involuntary sale.

[3] It is quite true that no involuntary transfer of the good will of a business can prevent an individual from doing business thereafter in his own name, and possibly the same rule applies to a corporation.

[4] It is possible that the plaintiffs have acquired no exclusive right to do business under the name of Robert B. Reilly Company if the bankrupt corporation itself should choose to do business, but they have acquired the right to designate the business they have bought by the name by which it has been known, and they have the exclusive right to use the term "Reilly's" teas and "Reilly's" coffees as the trade-name by which the products of that business have been advertised. These words were used by the corporation voluntarily; they represent no personal skill on the part of the individual Robert B. Reilly, and it is

quite immaterial whether or not Robert B. Reilly conferred upon the corporation the exclusive use of his name. So long as he transferred to the corporation his business and that business, both individual and corporate, was done under the name "Reilly's," the right to the use of the word "Reilly's" passed as part of its good will. In this respect the case is quite different from Cutter v. Gudebrod Brothers Co., 36 App. Div. 363, 55 N. Y. Supp. 298, where the corporation assumed the name "Cutter" to inform the public that the silk manufactured by said company or corporation was of a certain kind and quality known as Cutter's silk, or silk goods produced by John D. Cutter, and where the court held that the corporation, having announced by its trade-names that its products were the result of the skill of John D. Cutter, was committing a fraud on the public when it continued the use of those names against the will of John D. Cutter, and without the advantage of his skill. In other words, while a trade-name which has been adopted to assure the public that the products of the business are the results of the peculiar skill of an individual may not be so inseparably connected with the business as to pass with its good will, a trade-name which has been adopted merely as the name under which the business is conducted without regard to any peculiar skill on the part of the individual is part of the good will of the business. It follows that the receiver in bankruptcy has transferred the right to the use of the word "Reilly's" as part of the good will of the Robert B. Reilly Company.

[5] The defendants, however, claim that, if the receiver transferred to James Van Dyk Company the right to use the trade-name "Reilly's," then by parity of reasoning a transfer by it to E. M. Osborne & Co. of three of the stores, "together with all the right, title, and interest heretofore acquired by the said James Van Dyk Company from William H. Henkel, Jr., as temporary receiver of Robert B. Reilly Company, an alleged bankrupt, in and to the fixtures contained in and good will of (except the name Robert B. Reilly Company) the stores, business, and premises formerly leased by the Robert B. Reilly Company," etc., passed to Osborne and his assignees the right to use the name "Reilly's" in connection with these stores. If the bill of sale contained no express reservation, then this contention would obviously be sound. A consideration of the entire bill, however, has led me to the conclusion that it was the intent of the parties to retain not only the right to use the name Robert B. Reilly Company, but also the name "Reilly's." I have reached this conclusion because the bill also contains the following clause:

"Nothing herein shall be construed to mean that the party of the first part (James Van Dyk Company) has agreed to or does in fact assign or transfer to the party of the second part its right to use the name Robert B. Reilly Company, the party of the first part hereby especially reserving to itself the right to use said name, and the party of the second part hereby agrees to remove any signs from said premises if required on which shall be printed said name of Robert B. Reilly Company."

It is to be noted that this constitutes not only a reservation of the right to use the name Robert B. Reilly Company, but also an exception

of the right to use that name from the transfer of the good will of the stores. It is undisputed that, while the stores contained large signs bearing the name "Reilly's," they contained no signs upon which the name Robert B. Reilly Company was printed. As I have pointed out above, the name "Reilly's" was the trade-name under which the corporation did its business, and I believe that the parties intended in using the words "the name Robert B. Reilly Company" to describe the name by which that corporation was usually known and identified. The defendants, however, urge that, since the trade-name is inseparable from the good will and business (Slater v. Slater, 175 N. Y. 143, 147, 67 N. E. 224, 61 L. R. A. 796, 96 Am. St. Rep. 605; Falk v. American-West Indies Trading Co., 180 N. Y. 445, 450, 73 N. E. 239, 1 L. R. A. [N. S.] 704, 105 Am. St. Rep. 778), such an interpretation is unreasonable and such a reservation illegal. It is true that ordinarily the name is inseparable from the business and good will, and this reservation is enforceable only because the James Van Dyk Company retained with the right to use the name the entire business of the bankrupt corporation except these three names. On the other hand, this interpretation does not render the transfer of the good will of these stores nugatory. It passes to the assignee "the probability that the old customers will resort to the old place," which is the definition of "good will" given by Lord Eldon in the case of Cruttwell v. Lye, 17 Vesey, 335, 346. It passes to him all the good will inherent in the business conducted in these stores, except the right to claim that business is conducted by the bankrupt corporation or its successor. In this regard I have not overlooked the fact that the bill of sale is under seal, and that its terms are not to be varied or extended. In my opinion, however, the words used are sufficient to effectuate the intent of the parties.

[6] The second question is whether these defendants have unlawfully infringed the plaintiff's property rights. It seems to me beyond question that Heroy and the F. V. Reilly Tea Company have infringed these rights. As soon as Heroy was deposed, he organized the F. V. Reilly Tea Company. He interested F. V. Reilly, a brother of the deceased Robert B. Reilly, in the corporation, though Reilly's practical acquaintance with the tea business was slight, and he has apparently taken no personal part in the business. Though over three years have passed, he is still employed in a bank in New York, and has not yet paid anything for his stock. It thus seems quite evident that his connection with the corporation was solicited only to give some excuse for the use of the name Reilly in the corporate name. It is quite true that the motive with which the name was assumed is immaterial; the only question before me is whether or not the use of that name is calculated to induce in the minds of the public the belief that they are dealing with the business owned by the plaintiffs. Higgins Co. v. Higgins Soap Co., 144 N. Y. 462, 39 N. E. 490, 27 L. R. A. 42, 43 Am. St. Rep. 769. It is, however, illuminative of the personal attitude of the defendant Heroy in connection with the acts complained of. I also find that, immediately after the organization of the F. V. Reilly Tea Company, Heroy secured leases on some of the stores owned by the Robert B. Reilly Company and placed in charge of these stores some

of the former employés of that company. These acts, under the circumstances testified to, do not constitute any unfair competition, and in any event unfair competition before the bankruptcy gives rise to no cause of action by the purchase of the good will after bankruptcy; but the similarity of name of the corporations, the identity in several instances of the location of the stores and of the store managers, coupled with the subsequent advertisement of "Reilly's" teas and "Reilly's" coffees, and a warning against fakirs, in my opinion, are clearly calculated to induce in the public the belief that these stores are the stores of the Robert B. Reilly Company and should be enjoined by a court of equity.

[7] It is urged, however, that the plaintiffs are not entitled to such an injunction, because they do not come into equity with clean hands. There is no doubt in my mind but that until the deposition of the defendant Heroy the teas and coffees sold by the Robert B. Reilly Company were mixed by Heroy and the standard fixed by him; he was not, however, held out to the world as the basis of the reputation of these goods, nor was his skill in mixing their peculiar attribute, for he also mixed and bought the teas and coffees sold under the name of "Heroy's" by another company. Moreover, it is conceded that any expert could arrive at practically the same standards and mixtures. When he left the Robert B. Reilly Company, and his skill was no longer at the command of that company, the company was, therefore, not deceiving the public by continuing to sell its goods under the old name. For this reason the case of Prince Manufacturing Co. v. Prince Metallic Co., 135 N. Y. 24, 31 N. E. 990, 17 L. R. A. 129, is clearly distinguishable. Since the bankrupt company could properly continue to use its former trade-name, its assignees could do the same, provided, however, that they did not so change the nature of the article known by this name as to deceive the public. It does not appear that this name applied to any particular mixture of tea or coffee, but to all the teas and coffees sold by the Robert B. Reilly Co. After the plaintiffs obtained this business, they reduced the price of these goods and stopped selling the more expensive mixtures as "Reilly's" teas and coffees. They did not, however, change any particular feature that distinguished those goods from other teas and coffees. A business with an established reputation and name cannot be held to be defrauding the public when it makes changes in the price and to some extent the grade of its goods where those goods are not staple articles of fixed and definite ingredients and qualities.

[8] There is also no merit in the contention that the plaintiffs are not entitled to protection for the good will of the Robert B. Reilly Company because they are doing no business under that name. While they are not using the name of that corporation, they are using the name "Reilly's" in connection with the stores run by the James Van Dyk Company. They are not bound to run the business purchased from the bankrupt under the old name, but may run that business in connection with their own business and yet enjoy the value of the good will bought by them. The defendants also urge that the bankruptcy of the Robert B. Reilly Company was caused at least in part

by the wrongful acts of James Van Dyk, representing the plaintiffs. I find no evidence of any such wrongful acts. Van Dyk was asked by the corporation to assume its management, and his acquiescence in that request was not wrongful, and the bankruptcy was precipitated shortly thereafter by the attachment levied by the defendant Heroy. After the attachment the plaintiff had a right to file a petition in involuntary bankruptcy, and, after a court of competent jurisdiction had passed upon the validity of its debt, I should not consider now whether or not that debt was enforceable.

[9] I also cannot consider whether or not Van Dyk had arranged to sell some of the stores to Heroy after he purchased them at the bankruptcy sale. Even if Heroy's story is true, the arrangement was never consummated, and the plaintiffs should not, because of a claim of an agreement which the defendant has never sought to enforce, be deprived of protection for their legal rights. I have rather reluctantly reached the conclusion that the injunction should issue also against the defendant Osborne. It seems to me that the stores purchased by him were undoubtedly run for his account for some months, and that, by reason of that fact and his failure to remove the signs from his store, he is not in a position to ask that the complaint be dismissed as against him.

Settle form of interlocutory judgment.