## WOODWARD et al. v. WHITE SATIN MILLS CORPORATION.

No. 8784.

Circuit Court of Appeals. Eighth Circuit.

Aug. 9, 1930.

John E. Stryker, of St. Paul, Minn., and Trafford N. Jayne, of Minneapolis, Minn. (Stryker & Stryker, of St. Paul, Minn., on the brief), for appellants.

Frank A. Whiteley, of Minneapolis, Minn. (Chester W. Johnson, of Minneapolis, Minn., on the brief), for appellee.

Before KENYON, BOOTH, and GARDNER, Circuit Judges.

BOOTH, Circuit Judge.

This is an appeal from a decree in equity in a suit by appellee, as plaintiff, against appellants, for an injunction to restrain them from infringing certain trade-marks claimed to be owned by plaintiff, and for other relief.

Three trade-marks are involved: No. 166,-348, registered April 3, 1923, application filed November 21, 1921, covering the words

"White Satin" used in connection with sugar; No. 56,511, registered October 2, 1906, covering the words "White Satin" used in connection with wheat flour, and renewed August 24, 1926; No. 182,296, registered April 8, 1924, covering the words "Best White Satin" in combination with a picture of children and kittens, used in connection with wheat flour.

Plaintiff claims title to said trade-marks through a sale to A. L. Luick by the trustee in bankruptcy of White Satin Mills, Incorporated. Defendants claim that the title is in John H. Woodward, or in him and his brother as to one trade-mark.

The facts disclosed by the record bearing on the question of ownership are substantially as follows:

### As to Trade-Mark No. 166,348.

In 1919 or 1920 John H. Woodward and Ralph P. Woodward, his brother, formed a partnership known as J. H. Woodward Company, and began selling sugar under the name "White Satin." November 21, 1921, application was made to register the trade-mark "White Satin" for icing sugar in the name of the partnership. The application was signed by John H. Woodward. The registration issued in April, 1923. Meanwhile, in the spring of 1922, Ralph P. Woodward quit the partnership and took his money out. John H. Woodward continued the business alone. In August, 1922, a corporation was organized called "White Satin Sugar Company," and Ralph P. Woodward returned to the business. The assets and the business were transferred to the corporation, and it continued to carry on the business and to exclusively use the trade-mark until 1927. The only stockholders in the corporation were John H. Woodward, his wife, and his brother Ralph P. Woodward. The name of the corporation was changed in 1925 to White Satin Mills, Incorporated.

### As to the Trade-Marks No. 56,511 and No. 182,296.

These trade-marks were originally owned by the Barber Milling Company. In 1924 they were bought, along with a number of other trade-marks, by the White Satin Sugar Company. These two trade-marks were used in connection with flour exclusively by that company under its original name and under the name of the White Satin Mills, Incorporated, until 1927. A document purporting to be an assignment of these two trade-marks by the White Satin Sugar Company to John H. Woodward, bearing date October 22, 1924, was introduced in evidence. The document bore an indorsement, "Stamp Cancelled. 28803. Papers Returned Div. D." The testimony showed that this document had been sent at some time not definitely fixed to the Patent Office, and had been returned unrecorded, but with the above indorsement on it.

In 1926 the trade-mark No. 56,511 was renewed by "White Satin Mills, Incorporated, a corporation of Minnesota, assignee by mesne assignments." The application for this renewal was signed by John H. Woodward.

### Later History.

In February, 1927, the White Satin Mills, Incorporated, became financially embarrassed, and it conveyed all its property to a trustee for the benefit of creditors, including its business and the good will thereof, with power to continue the business. By a separate instrument an attempt was made to transfer the three trade-marks and the good will of the business to the trustee, and in this instrument appeared a claim on the part of John H. Woodward personally to some right, title, or interest in the trade-marks.

The trust agreement was not successful, and bankruptcy proceedings followed. March 26, 1927, a voluntary petition was filed. April 4th a receiver was appointed with power to carry on the business. April 16th an adjudication was had. May 11th a trustee was appointed with power to sell the property. Bids were received by the trustee from John H. Woodward and A. L. Luick, and perhaps others. November 28, 1927, the property was sold to A. L. Luick. The sale covered machinery and equipment, tools, office furniture, a number of trade-marks, including those here in controversy, the corporate books and records; together with the good will of the bankrupt's business, and of all business done by the bankrupt under the trade-marks, including the use or abandonment of the corporation name.

Meanwhile, in June, 1927, John H. Woodward organized a new corporation, having the name White Satin Sugar Company, and having as its officers, himself as president, his brother Ralph as secretary and treasurer, and his wife as vice president. The corporation immediately started in the business of selling sugar, using the words "White Satin" in connection therewith, and operating in the same building formerly occupied by the White Satin Mills, Incorporated, and in which were located the equipment and machinery sold by the trustee in bankruptcy to Luick.

In July, 1927, the trustee in bankruptcy commenced a suit in equity against the Woodwards and the new corporation, praying for an injunction restraining them from using said trade-marks. This suit was pending when the sale was made by the trustee to Luick as above set out. After the sale to Luick the said suit by the trustee was dismissed on motion of the defendants, on the ground that the trustee had ceased to have any interest in the subject-matter of the suit.

Luick, after the sale to him by the trustee in bankruptcy of the assets and equipment of the White Satin Mills, Incorporated, including the trade-marks and the good will of the business, went to the building where the machinery and other equipment were located and where the new White Satin Sugar Company was doing business, and demanded the equipment, machinery, etc., which he had purchased from the trustee in bankruptcy. Woodward refused to allow any of it to be removed. Woodward also threatened certain manufacturers of bags and cartons with suit if they manufactured for Luick bags and cartons having any of the said trade-marks thereon.

In January, 1929, the present suit was commenced, the plaintiff being the vendee to whom Luick transferred the property, including the trade-marks, which he had bought from the trustee in bankruptcy.

Considerable business in the sale of sugar and flour under said trade-marks has been done by the new White Satin Sugar Company under the management of John H. Woodward since June, 1927; and a small amount of business of similar character has been done by the plaintiff company under the management of Luick.

### The Present Suit.

The trial court by its decree held that the White Satin Mills, Incorporated, was on the 16th of April, 1927, the date of its adjudication in bankruptcy, the sole and exclusive owner of the several trade-marks in controversy; that they passed with the assets, business, and good will of the business of the corporation to the trustee in bankruptcy; that they were sold by the trustee with the assets, the business, and good will of the business to Luick; that the same were sold by Luick to plaintiff; that plaintiff had used the trade-marks in the business done by it, and had not abandoned them. It held further that there had been a failure to make a formal assignment of trade-mark No. 166,348 to the White Satin Sugar Company in 1922 when the assets and business and good will

of the business of J. H. Woodward Company were transferred to it. It held further that the defendants, the new White Satin Sugar Company and John H. Woodward and Ralph P. Woodward, had infringed the rights of plaintiff secured by the several trade-marks in controversy. The decree ordered a formal assignment of trade-mark No. 166,348 to be made by John H. Woodward and Ralph P. Woodward to plaintiff; and an injunction against defendants, restraining them from using said trade-marks or either of them, and from using the words "White Satin" in the corporate name of the defendant corporation.

One of the questions raised by the assignments of error is whether the White Satin Mills, Incorporated, owned the trade-marks at the time of its adjudication in bankruptcy. [1, 2] Trade-mark No. 166,348 had been registered in the name of the partnership J. H. Woodward Company in April, 1923. The application for registration had been made in November, 1921. Between these dates the corporation White Satin Sugar Company had been formed and the business and the good will of the business, whether of the partnership or of John H. Woodward doing business alone under the partnership name, had been sold to the corporation. This sale carried with it the trade-mark in connection with the business and the good will. A formal assignment of the trade-mark, although desirable for record purposes, was not necessary. Hopkins on Trade-Marks (4th Ed.) pp. 28, 30, and cases cited; President Suspender Co. v. Macwilliam (C. C. A.) 238 F. 159; Replogle v. Air-Way Co., 52 App. D. C. 364, 287 F. 765; Detroit Creamery Co. v. Velvet Brand, etc., Co., 187 Mich. 312, 153 N. W. 664.

As to the Barber trade-marks, they were bought and paid for by the corporation, White Satin Sugar Company. It is true John H. Woodward claimed and introduced evidence tending to show that he was the owner of the trade-marks and that the corporation was a mere licensee; but the record as a whole in the judgment of the trial court refuted such a claim, and we think the trial court was right. There was no written license shown; there were no terms or details of an oral license disclosed by the evidence; there was no tenable reason given for making a license. Further, the position of John H. Woodward as to his interest in the trade-mark No. 166,348 has been inconsistent. In his answer to the complaint in the suit against him by the trustee in bankruptcy, he alleges that he and his brother Ralph are the owners

of this trade-mark. But, in his answer in the case at bar, he alleges that he is the owner by assignment from J. H. Woodward Company. On this appeal both positions are taken at one time or another.

As to the Barber trade-marks, a purported assignment from the White Satin Sugar Company to John H. Woodward, dated October 22, 1924, was produced. But it is evident that the parties thereafter considered this document of no effect. The evidence does not show that any business or good will of any business was in fact transferred. The corporation kept on doing all the business which was done. And when in 1926 a renewal of one of these Barber trade-marks (No. 56,511) was obtained, the application for the renewal in the name of the corporation White Satin Sugar Company was signed by John H. Woodward, and the renewal was obtained in the name of the corporation.

When viewed as a whole, we think the record clearly shows that the White Satin Mills, Incorporated, was the sole and exclusive owner of all three of the trade-marks at the time of the adjudication in bankruptcy.

■ That the trade-marks owned by the bankrupt corporation and the good will of the business passed to the trustee in bankruptcy, and in turn passed by the trustee's sale to Luick, cannot be seriously questioned. 11 US CA § 110(a)(2); Hopkins on Trade-Marks (4th Ed.) p. 30; Sarrazin v. Irby Cigar & Tobacco Co. (C. C. A.) 93 F. 624, 46 L. R. A. 541; S. F. Myers Co. v. Tuttle (C. C.) 183 F. 235; Sawilowsky v. Brown (C. C. A.) 288 F. 533.

In September, 1928, an application was made to register for sugar the trade-mark or part of the trade-mark No. 182,296, theretofore registered for flour. This application was made, not in the name of John H. Woodward, but in the name of the new corporation, White Satin Sugar Company, and claim was made of "use" since about October 1, 1924. The only "use" shown by the record during that period was the "use" by the original White Satin Sugar Company under that name, and under its later name, White Satin Mills, Incorporated. This claim of "use" in connection with the application to register a trade-mark would seem to indicate that the Woodwards were asserting that in some way the new White Satin Sugar Company was the successor of the bankrupt corporation.

■ The appropriation by John H. Woodward and by his new corporation, White Satin Sugar Company, of this "use" by the bankrupt corporation throws light on their appropriation of the trade-marks and the good will of the business of the bankrupt corporation. This "use" and these trade-marks and the good will of the business were not subject to appropriation either by John H. Woodward or by the general public. They were assets of the bankrupt corporation, and passed to the trustee in bankruptcy, and by his sale to the purchaser. The passing through bankruptcy of a corporation involves something more than a mere shedding of its debts as a snake sheds its skin; it involves the distribution of its assets among its creditors, not an appropriation thereof by its stockholders.

Another contention of appellant is that Luick acquired the trade-marks from the trustee in bankruptcy with full knowledge of the claim of John H. Woodward, and that the dismissal of the suit brought by the trustee in bankruptcy was in effect an adjudication that the trustee in bankruptcy had no title to the trade-marks, and was binding on Luick, who had an opportunity to have his rights determined in that suit.

■■ It may be assumed that a dismissal of a suit in equity, without more, is to be presumed to be a dismissal on the merits. Freeman on Judgments (5th Ed.) § 760; Durant v. Essex Co., 7 Wall. 107, 19 L. Ed. 154; Wilson v. Smith (C. C. A.) 126 F. 916, 919; Fowler v. Osgood, 141 F. 20, 4 L. R. A. (N. S.) 824 (C. C. A. 8); Hickey v. Johnson, 9 F.(2d) 498 (C. C. A. 8). But that rule is subject to the important qualification that the record may be examined to determine the character of the dismissal, and that the presumption is thus liable to be overcome. Freeman on Judgments (5th Ed.) § 761; Swift v. McPherson, 232 U. S. 51, 34 S. Ct. 239, 58 L. Ed. 499; Hughes v. United States, 4 Wall. 232, 237, 18 L. Ed. 303; Vicksburg v. Henson, 231 U. S. 259, 34 S. Ct. 95, 58 L. Ed. 209; Groblewski v. John Chmiell Co. (C. C. A.) 268 F. 240; Ledbetter v. Wesley, 23 F. (2d) 81 (C. C. A. 8); Schnerb v. Caterpillar Co. (C. C. A.) 24 F.(2d) 377.

In the case at bar, the order of dismissal shows conclusively that the dismissal was not on the merits.

Further, Luick was not a party to that suit, and naturally and in fact had no notice of the motion to dismiss.

It is further contended by appellant that Luick and the plaintiff corporation have made very little use of the trade-marks and in effect have abandoned the business in which they were used. The answer to this contention is that the record shows that there has

been enough business done with use of the trade-marks to demonstrate tnat there has been no abandonment; and the record further shows that the small extent of the business done has been largely and directly due to the infringing acts of the defendants.

Finally, it is urged that the injunction should not have restrained defendants from the use of the words "White Satin" in the corporate name of the new White Satin Sugar Company. We cannot agree with this suggestion. The sale by the trustee in bankruptcy, under the circumstances here involved, included the right to use the corporate name of the bankrupt corporation. The essential feature of the corporate name was the words of the trade-mark "White Satin." The defendants having been found to have no right or title to the trade-marks, we think that reasonable protection of the rights of plaintiff required a disuse by defendants of the words "White Satin" in the name of the defendant corporation.

Our conclusion is that the decree should be affirmed, and it is so ordered.