[No. 23875. Department One. January 18, 1933.]

WASHINGTON BARBER & BEAUTY SUPPLY COMPANY, *Appellant*, v. SPOKANE BARBER & BEAUTY SUPPLY COMPANY, *Respondent and Cross-Appellant*.[1]

*Danson, Lowe & Danson,* for appellant.

*Barker & Barker,* for respondent and cross-appellant.

MILLARD, J.—The Washington Barber & Beauty Supply Co., a domestic corporation, brought this suit to enjoin the Spokane Barber & Beauty Supply Co., a domestic corporation, from using the name "Spo-

[1]Reported in 18 P. (2d) 499.

kane Barber Supply," or any combination of those three words. Plaintiff's claim of priority of right to the use of the name was based upon its purchase from the trustee in bankruptcy of the physical assets, the "good will" and "corporate name" of the Spokane Barber Supply, a bankrupt corporation; and prior and continuous user of that name. Defendant answers, alleging its legal acquisition of its corporate name and prior and continuous use of its true corporate name, including the name "Spokane Barber Supply." By cross-bill, defendant charged plaintiff with unfair trade competition, and prayed for an order restraining use of the name "Spokane Barber Supply" by the plaintiff. The court denied relief to either party. Both have appealed, in view of which the parties will, on appeal, be designated as in the trial court.

The facts are as follows: All of the firms and corporations mentioned herein were engaged, in the city of Spokane, in the business of selling supplies generally used by barbers. The plaintiff continuously operated since 1917 under its present corporate name. Until purchase of the assets of the bankrupt corporation, its place of business was at N. 7 Stevens street. After that purchase, the plaintiff's business was conducted at 329 Riverside avenue, former business location of the corporation whose assets were purchased by the plaintiff.

A partnership, later incorporated, known as the "Spokane Barber Supply" or "Supply Company," operated at 329 Riverside avenue for approximately thirty years prior to going into bankruptcy. In March, 1928, the Spokane Barber Supply was adjudicated a bankrupt. The receiver appointed for the corporation was thereafter elected a trustee in bankruptcy. From

that time continuously until sale to the plaintiff, the Spokane Barber Supply was operated by the trustee as a going business.

On May 28, 1928, the plaintiff—then in business at N. 7 Stevens street—purchased from the trustee in bankruptcy, for a recited consideration of $2,525.88, "all the merchandise, stock, furniture and fixtures, and accounts receivable due said bankrupt." Plaintiff succeeded, on July 28, 1928, in purchasing from the trustee in bankruptcy, for a stated consideration of one hundred fifty dollars,

"All the right, title and interest of said Trustee in and to the corporate name of Spokane Barber Supply Co.; the good will, books of account, stock books, minute books, and records of said corporation, of whatsoever name, nature or kind."

At the time the Spokane Barber Supply became bankrupt, the John B. Gordon Barber Supply Company was in business at 247 Riverside avenue. In March, 1928, the John B. Gordon Barber Supply Company incorporated as the "Gordon-Spokane Barber & Beauty Supply Company" and continued in business under that designation until it changed its name in July, 1931, to "Spokane Barber & Beauty Supply." That is the defendant in the case at bar.

In June or July, 1928—about the time plaintiff purchased the assets of the bankrupt Spokane Barber Supply—plaintiff moved its place of business from N. 7 Stevens street to 329 Riverside avenue, the address at which the business of the defunct Spokane Barber Supply was formerly conducted. After making that change, and continuously thereafter to the present time, the Spokane Barber Supply and the plaintiff Washington Barber & Beauty Supply Co. were listed in the telephone directory under the old

telephone number of the Spokane Barber Supply Company. In its proper alphabetical place in the Spokane telephone directory was listed

"Washington Barber & Beauty Supply Co.
329 Riverside..................Main 2608."

In the telephone directory under the letter "S" appeared

"Spokane Barber's Supply
329 Riverside..................Main 2608."

Immediately above "Spokane Barbers' Supply," the defendant has been listed as follows, since change of its corporate name in July, 1931:

"Spokane Barbers' & Beauty Supply Inc.
247 Riverside..................Main 1526."

A few days subsequent to the bankruptcy of the Spokane Barber Supply Co., that corporation's president and secretary became employees of the Gordon-Spokane Barber & Beauty Supply Company. This is the defendant in the case at bar, its present name having been adopted in July, 1931, as stated above.

When plaintiff removed its business to 329 Riverside avenue (the address at which the Spokane Barber Supply conducted its business until its assets were sold to plaintiff by the trustee in bankruptcy), the name of the bankrupt corporation was removed from the signs on the building. The signs were changed to read "Washington Barber & Beauty Supply Company." It should be borne in mind, however, that plaintiff continued to carry the name of "Spokane Barber Supply" in the telephone directory for advertising purposes.

Immediately following its purchase of the assets, "good will" and "corporate name" of the Spokane Barber Supply, plaintiff endeavored to incorporate under the name of, or change its name to, "Spokane

Barbers' Supply Company.'' The effort was unsuccessful. The secretary of state informed the plaintiff that articles of incorporation adopting the name of the bankrupt corporation could not, under the statute, be accepted for filing until the lapse of three years and the striking thereafter of the name for non-payment of the annual license fee; that is, until July 1st, 1931, when the articles of incorporation of the Spokane Barber Supply Company would be stricken from the records for delinquency in payment of annual license fees, the name could not be adopted by any other person or corporation. By reason of illness of plaintiff's attorney, the articles changing plaintiff's corporate name were not filed on the eligible date. In August, 1931, plaintiff's articles of incorporation, under the name of ''Spokane Barbers' Supply Co.,'' were rejected by the secretary of state, who informed the plaintiff

''. . . that this name so closely resembles 'Spokane Barber and Beauty Supply,' which is already of record, as to exclude the use of the name you have chosen.''

In July, 1931, the Gordon-Spokane Barber & Beauty Supply Company (formerly the John B. Gordon Barber Supply Company), which was incorporated in March, 1928, when the Spokane Barber Supply was going through bankruptcy, filed in the office of the secretary of state articles changing its name to ''Spokane Barber & Beauty Supply.'' After defendant had changed its name, in 1928, to Gordon-Spokane Barber & Beauty Supply Company, and following the plaintiff's purchase of the assets of the Spokane Barber Supply, demand was made on the postal authorities, by the plaintiff and by the defendant, for delivery to it of all mail addressed to the ''Spokane Barber Supply Company.'' Pursuant to

agreement of the parties (and from date thereof until the defendant again changed its name in 1931), all mail addressed to ''Spokane Barber Supply Company,'' unless it carried defendant's business address (247 Riverside avenue), was delivered to the plaintiff.

After defendant (''Gordon-Spokane Barber & Beauty Supply Company'') changed its name, in 1931, to ''Spokane Barbers' & Beauty Supply,'' the complaints of plaintiff and defendant to the postal authorities resulted in a new ruling respecting the delivery of the mail. Under that ruling, all mail addressed to the Spokane Barber Supply Company not addressed to plaintiff's place of business (329 Riverside avenue) was delivered to the defendant.

In *Rosenburg v. Fremont Undertaking Co.*, 63 Wash. 52, 114 Pac. 886, we held that the right to use a particular name as a trade name belongs to the one who first appropriated it and uses it in connection with a particular business; that, if a trade name is abandoned or given up by the one originally appropriating it, the one thereafter making use of the name acquires a right to it not only superior to the right of the original user, but superior to all the world; that one trade name infringes upon another if the resemblance of the one to the other is such as to deceive persons of ordinary caution into the belief that they are dealing with the one firm or corporation when they use the name of the other. We also held that the rule is not different because the name, or some part of it, may be a geographical name, and said:

''The rule is not rested on the principle that the user has a property in a name, but on the principle that it is a fraud on both the person who has established a trade which he carries on under a given name, and the public who trade with the person on the faith of the name, to allow another to assume the same or

a similar name for the purpose of selling his own goods or inducing people to trade with him under the belief that they are purchasing the goods of, or trading with, the person who established the name. *Eastern Outfitting Co. v. Manheim*, 59 Wash. 428, 110 Pac. 23.

" 'A corporation may be enjoined from using a name or conducting a business under a name so similar to the name of a previously established corporation, association, partnership, or individual, engaged in the same line of business, that confusion or injury results therefrom.' "

The name used as a trade name by a corporation may be its corporate name or another name legally acquired and used by the corporation as a trade name. *Wright Restaurant Co. v. Seattle Restaurant Co.*, 67 Wash. 690, 122 Pac. 348.

A trade name, lawfully identified with the business of a bankrupt at the time of his adjudication, passes under the provision of sub-division 5 of § 70-a of the bankruptcy act—

"The trustee of the estate of a bankrupt  .  .  . shall  .  .  . be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all (1)  .  .  .; (2) interests in patents, patent rights, copyrights, and trade-marks;  .  .  . (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him." U. S. C., Title 11, § 110.

to the trustee in bankruptcy as an asset of the bankrupt's estate. In a voluntary sale of a business as an entirety, a trade name which has been legally established and identified with such business passes to one who purchases that business as a whole, though the trade name is not specifically mentioned in the bill of sale. If the trade name is not a personal one, the

same rule is applicable to a sale by operation of law through bankruptcy. Even if the bankrupt's name would not pass to the purchaser in a sale by operation of law through bankruptcy, unless the bill of sale specifically mentioned that asset, the title to such asset would pass to the purchaser if the language of the bill of sale disclosed a purpose to transfer the good will and trade name of the bankrupt in connection with the physical assets. *Children's Bootery v. Sutker,* 91 Fla. 60, 107 So. 345, 44 A. L. R. 698.

Applying the foregoing principles to the facts in the case at bar, it is clear that, in refusing to grant to plaintiff the relief craved, the trial court erred.

The trade name which is the subject matter of this controversy was legally acquired by the Spokane Barber Supply Company and used continuously by that corporation for thirty years as a trade name. In January, 1928, that corporation was in financial difficulties, and a suit for the appointment of a receiver was pending. In March, 1928, the company was adjudicated a bankrupt. Very shortly thereafter, the president and secretary of the bankrupt entered the employ of the John B. Gordon Supply Company, which immediately incorporated as the "Gordon-Spokane Barber & Beauty Supply Company."

By priority in adoption and user, the Spokane Barber & Supply company had the superior right to the trade name, which had not been abandoned or lost at the time the John B. Gordon Barber Supply Company adopted the same. The trade name of the Spokane Barber Supply passed to the trustee in bankruptcy as an asset of the bankrupt's estate. That trade name passed to the plaintiff under his purchase of it and the other assets of the bankrupt from the trustee in bankruptcy. The very purpose of the plaintiff in purchas-

ing the "corporate name" and "good-will" of the bankrupt was to acquire a valuable trade name. The record before us affirmatively shows that the trade name was of value.

Defendant did not, by amending its articles of incorporation in 1928 and adopting the name, acquire a legal right at that time to the trade name. The defendant could not at that time, in such a manner, legally acquire the trade name, which had not been abandoned. That trade name was then an asset of the bankrupt's estate. Not until July 1st, 1931, when the articles of incorporation of the bankrupt would be stricken from the records of the office of the secretary of state for delinquency in payment of annual license fees, could the name of the bankrupt corporation be thus adopted by any other corporation.

It is not questioned that the Spokane Barber Supply company had the superior right to the use of that name until that corporation became bankrupt in 1928. The bankrupt corporation did not abandon the trade name; it passed to the trustee in bankruptcy as an asset of the bankrupt's estate. By its purchase from the trustee in bankruptcy, the plaintiff acquired the superior right to the trade name. The plaintiff never abandoned the use of that name. There is no evidence reflecting any intent on the part of the plaintiff at any time to abandon the use of the trade name.

It is true the signs in front of the place of business were changed. It is true, also, that the plaintiff continued the use of letterheads with its true corporate name thereon. That did not constitute abandonment. The retention of the telephone number of the defunct corporation and the carrying of its name as well as the plaintiff's true corporate name in the directory, as described above, are indicative of no purpose to abandon

the use of the trade name. Quite the reverse. The efforts, as above recited, made by the plaintiff to amend its articles of incorporation and adopt the trade name as its true corporate name, rebut the charge of an intent to abandon the trade name. There was a continuous user by plaintiff of the trade name it had legally acquired, and there was no evidence of an intention to relinquish the right claimed by plaintiff.

"There must be found an *intent* to abandon, or the property is not lost; and while, of course, as in other cases, intent may be inferred when the facts are shown, yet the facts must be adequate to support the finding . . . Acts which unexplained would be sufficient to establish an abandonment may be answered by showing that there never was an intention to give up and relinquish the right claimed." *Baglin v. Cusenier Co.*, 221 U. S. 580.

On July 15, 1931, the defendant, by amended articles, changed its corporate name to Spokane Barber & Beauty Supply Company. From the beginning of the financial difficulties of the Spokane Barber Supply Company, the defendant endeavored to acquire the trade name in controversy. The employment of two of the former officers of the Spokane Barber Supply Company immediately following bankruptcy of that corporation and the almost immediate change of corporate name to "Gordon-Spokane Barber & Beauty Supply Company," evince the deliberate purpose of defendant to acquire the trade name. Not until July, 1931, could the bankrupt corporation's name be adopted as the true name of another corporation. In August, 1931—plaintiff was excusably delayed from July 1, 1931—when plaintiff attempted to file its amended articles changing its corporate name to the trade name it had legally acquired and continuously used, it was discovered that, for the purpose of unfairly competing with the plaintiff in its business, the

defendant, on July 15, 1931, had adopted the trade name as its corporate name.

The failure of the plaintiff to register under an assumed name and its lack of success in its attempts to change its corporate name to the trade name it had lawfully acquired and continuously used for a number of years, afford no justification to the defendant to appropriate the trade name of the plaintiff. By compliance, on July 15, 1931, with the statutory requirements for change of corporate name, the defendant did not acquire a priority of right to the use of the trade name. A corporation may not thus unfairly compete with another in its business. A contrary holding would not only countenance a fraud, but would encourage a fraud on the person who has established a trade which he carries on under a given name, and a fraud on the public who trade with the person on the faith of the name.

"No man has a right to dress himself in colors or adopt and bear symbols to which he has no peculiar or exclusive right, and thereby impersonate another person for the purpose of inducing the public to suppose either that he is that person, or that he is connected with, or selling the manufacture of such other person while he is really selling his own." *Governor v. Hudson Bay Fur Co.*, 33 Fed. (2d) 801.

Plaintiff and defendant were engaged in the same line of business. The name adopted and used by the defendant infringed upon the trade name, to the use of which the plaintiff had priority of right. The judgment is affirmed on defendant's appeal. On the appeal of the plaintiff, the judgment is reversed, and the cause remanded with direction to the superior court to grant the plaintiff the relief for which it prays.

TOLMAN, PARKER, HOLCOMB, and MITCHELL, JJ., concur.