MUTUAL LIFE INS. CO. v. MENIN et al.

Nos. 93, 130.

Circuit Court of Appeals, Second Circuit.

Dec. 16, 1940.

Samuel P. Gilman and Gerson C. Young, both of New York City, for appellant Abraham I. Menin, trustee.

David S. Hecht, of New York City, for appellant Parke-Bernet Galleries, Inc.

Vincent Keane, of New York City, for appellee.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

This case comes up on two appeals. The first is from an order in bankruptcy, reversing the order of a referee so far as it confirmed the sale of that one out of four parcels of the bankrupt's property, which included its name and "good-will"; the second appeal is from an order denying a motion for a rehearing of that decision. The bankrupt filed a petition as debtor under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., for an "arrangement," and while this was pending, the referee ordered all its property to be sold, including its name and "good-will." The Mutual Life Insurance Company, a pledgee of the bankrupt's shares, objected to this so far as it involved the sale of the debtor's corporate name; but the referee overruled the objection and struck down the property in four lots. (Two weeks later the debtor was adjúdicated a bankrupt and the proceeding was dismissed as an "arrange-

ment" and proceeded as a liquidation). The Mutual Life Insurance Company then appealed from that part of the referee's order which confirmed the sale of the corporate name, and succeeded before the district judge who sent the matter back for a resale without the name. After the trustee and the buyer had appealed from the judge's order and while the appeal was pending, the trustee moved for a rehearing, or in the alternative that the judge should refer the case back to the referee for further evidence. This motion the judge denied, and the trustee has also appealed from the denial.

The bankrupt had been engaged in the City of New York as an "auction gallery," its business being to auction off works of art and its income coming from commissions upon the resulting sales; it had been in this business for many years and had acquired a very high reputation among dealers in works of art. The proceeding under Chapter XI was not apparently expected really to result in any "arrangement," but to enable the "good-will" to be sold at better advantage than it could be in liquidation. The four lots sold were made up as follows: (1) The "Painting Sales Records"; that is, the records of what had been sold in the past; (2) the furniture, fixtures, equipment and miscellaneous property; (3) the "Art Reference Library"; (4) the "right, title and interest in and to the name American Art Association-Anderson Galleries, Inc.," with the right to use it; the "good-will"; all interest in the shares which the bankrupt held in subsidiary companies together with the use of their names; "Customers' Lists, books, records and correspondence other than books of account needed * * * to wind up its affairs * * * all contracts containing restrictive covenants, all sales catalogues"; and three small accounts which the referee thought it necessary to include in order to allow the "good-will" to be sold at all. The first and third lots were struck down to one purchaser; the second and fourth to another, the appellant, the Parke-Bernet Galleries, Inc. The appeal concerns only the fourth.

■ There can be no question of the power of the court to sell the "good-will" of the bankrupt along with its other assets. Sawilowsky v. Brown, 5 Cir., 288 F. 533; Woodward v. White Satin Mills Corp., 8 Cir., 42 F.2d 987, 990, 991;

United States Ozone Co. v. United States Ozone Co. of America, 7 Cir., 62 F.2d 881, 885, 886. What rights the buyer gets and what the bankrupt loses, are another matter. The Bankruptcy Act, § 70 sub. a (5), 11 U.S.C.A. § 110, sub. a (5), vests in the trustee all "property" which the bankrupt may transfer, or which his creditors may reach, and both are to be determined by the law of the state. The law of New York, like that of most other jurisdictions, has expanded the meaning of the term "good-will" since Lord Eldon defined it in Crutwell v. Lye, 17 Ves.Jr. 335, 346; it includes not only the likelihood that customers will return to the old place of business, but also that they will continue to do business with the old name. Whether this is because they assume that the quality of the service or the honesty of the management will continue; or whether because of the mere inertia of past habit—like the "good-will" which results from advertising—we need not inquire. However acquired, our law recognizes the competitive advantage that this disposition gives to the successor of an established business, and treats it as "property." Obviously, so understood, "good-will" is dependent in its much more important part upon the privilege of using the old name and of preventing its use by others; in modern times, especially in a city like New York, the mere privilege of doing business at the old site is ordinarily not of prime consequence.

■ The Parke-Bernet Company, by buying the second and fourth lots, became the owner of all the bankrupt's property except the "Painting Sales Records" and the "Art Reference Library." The record does not disclose how vital either of these last was to the conduct of the business, and we may assume that their absence will not so cripple it that it cannot go on in real continuity with its past. Thus the "good-will" passed to this bidder, and since the exploitation of it substantially coalesces with the use of the old name, we have first to consider the extent of the acquired privilege to use that name; more concretely whether some phrase must be added to indicate that the business is being conducted by a successor. So far as concerns the public at large, we can see no more reason to require this than when a trade-mark is sold. If an individual or a firm sells a business which has been conducted under his or

their names, it can be plausibly argued that those who deal with the buyer may be misled; but everyone knows that the name of a corporation assures no continuity of personnel—at least when, as here, the only name of an individual which it contains has long since ceased to mean that he has any share in its management. Buffalo Oyster Company v. Nenni, 132 Misc. 213, 217, 229 N.Y.S. 210. Only the bankrupt's interest can therefore demand a distinguishing phrase. In New York, whatever may have been the proper scope of Slater v. Slater, 175 N.Y. 143, 67 N. E. 224, 61 L.R.A. 796, 96 Am.St.Rep. 605, we may take it as now settled—at least in the case of the involuntary sale of an individual's business or of a firm's—that the buyer must add the word "successor," or its equivalent to the old title. In re Brown's Will, 242 N.Y. 1, 150 N.E. 581, 44 A.L.R. 510. See also Hegeman & Co. v. Hegeman, 8 Daly, N.Y., 1. But it does not follow that the same is true of a corporation. We cannot find any case in which the question has been directly adjudicated, and those dicta which seem to recognize no distinction between corporations and individuals have been thrown out quite casually and without discussion. Montreal Lithographing Co. v. Sabiston, [1899] App.Cas. 610, 614; Metropolitan T. & T. Co. v. Metropolitan T. & T. Co., 156 App.Div. 577, 582, 141 N.Y.S. 598; Lothrop Publishing Co. v. Lothrop, Lee & Shepard Co., 191 Mass. 353, 355, 77 N.E. 841, 5 L.R.A.,N.S, 1077. It would seem that limitations upon the buyer's privilege are proper only so far as they are complementary to the bankrupt's privilege to use the name in competition with him. If the bankrupt retains no such privilege he can certainly have no interest in what the buyer may call himself; if on the other hand the bankrupt may compete in his old name, obviously both should not use the same name. Thus the discussion comes down to the extent of the bankrupt's privilege to compete with the buyer.

▮▮ In 1910 the Court of Appeals of New York (Von Bremen v. MacMonnies, 200 N.Y. 41, 93 N.E. 186, 32 L.R. A.,N.S., 293, 21 Ann.Cas. 423) accepted the ·doctrine of the House of Lords in Trego v. Hunt, L.R.1896, App.Cas. 7, that the voluntary sale of a business deprived the seller of the right to solicit the old customers, though not of competing with him in the same business. An involuntary transfer does not affect his liberty to do either. So far as we have found, it has never been suggested that an individual bankrupt—or other owner involuntarily dispossessed—may not so compete in his own name, but must adopt another. Such a limitation would impose a handicap which might be decisive; indeed it would often give his creditors the practical power of preventing his resumption of the only activity by which he could earn a living. This is shown to be the source of his privilege by the fact that where he has done business only under a trade-name he must abandon it in any future competition with the buyer. Sawilowsky v. Brown, supra, 5 Cir., 288 F. 533; Children's Bootery v. Sutker, 91 Fla. 60, 107 So. 345, 44 A.L.R. 698. Now a corporation is in this respect like an individual doing business under a trade-name. Lawyers Title Ins. Co. v. Lawyers Title Ins. Corp., 71 App. D.C. 120, 109 F.2d 35, 42, 43. Stripped of its assets it is no. more than a procedural convenience; its franchise allows the shareholders to act collectively for the corporate purposes, but it gives them nothing more. They do not need the same protection as an individual resuming his old business; they may severally compete under their own names, or they may without serious embarrassment do so collectively under a new name. Thus, although a bankrupt corporation may have the same privilege of competition as an individual, it would à priori seem proper to forbid its competing under its old name.

The authorities are not very helpful. In New York there is nothing decisive. Van Dyk v. Van Dyk & Reeves, 245 N. Y. 516, 157 N.E. 840, concerned an action by the bankrupt to enjoin the buyer, which depends upon other considerations; and may indeed have gone off on the issue of res judicata. In Lothrop Publishing Co. v. Lothrop, Lee & Shepard Co., supra, 191 Mass. 353, 355, 77 N.E. 841, 842, 5 L.R.A.,N.S., 1077, the court reserved the question whether a corporation which had made an assignment for the benefit of creditors might "have the same right to the use of its corporate name * * * that an. individual would have." In Montreal Lithographing Co. v. Sabiston, supra, L.R,[1899] App.Cas. 610, the bill was directed against a third person, and would have succeeded if he had shown any disposition to compete with the buyer. The defendant was

also a third person in Metropolitan T. & T. Co. v. Metropolitan T. & T. Co, supra, 156 App.Div. 577, 141 N.Y.S. 598; Woodward v. White Satin Mills Co., supra, 8 Cir., 42 F.2d 987; Reconstruction Finance Corp. v. J. G. Menihan Corp., D.C., 22 F.Supp. 180; Washington Barber Supply Co. v. Spokane, B. & B. S. Co., 171 Wash. 428, 18 P.2d 499; G. B. McVay & Son Seed Co., Inc. v. McVay Seed & Floral Co. Inc., 201 Ala. 644, 79 So. 116; Peck Brothers & Co. v. Peck Brothers Co., 7 Cir., 113 F. 291, 62 L.R.A. 81; Van Dyk Co. v. Reilly Co., 73 Misc. 87, 130 N.Y.S. 755; and E. Edelman & Co. v. Fredericks Armature Mfg. Co., D.C., 3 F.Supp. 973. On the other hand in Theobald-Jansen Electric Co. v. Harry I. Wood Electric Co., 285 F. 29, the Sixth Circuit affirmed an order which had refused to sell the bankrupt's name, because, being a corporation, it continued to exist and was entitled to a discharge; and this was followed in Re Connolly & Wallace Co., D. C., 32 F.Supp. 827. But Judge Holt enjoined the bankrupt in S. F. Myers Co. v. Tuttle, C.C., 188 F. 532, and so did Mr. Justice Erlanger in Julius Bien Co. v. Franklin, 87 Misc. 434, 151 N.Y.S. 23.

 There being no decisive weight of authority to the contrary we feel free to hold, and we do hold, that, as an incident to the transfer to it of the "good-will" of the bankrupt, the Parke-Bernet got the privilege of using the old name without distinguishing phrase, and the right to prevent the bankrupt from using it in competition, not only in the same business, but in any other which could possibly be confused with the old business. The referee's order which the judge reversed went farther than this. It directed the bankrupt to accept the bid for its "right, title and interest in and to the

name * * * or any component part * * * and the right to use the same and engage in any business thereunder." It then ordered it to "execute and deliver and file all documents * * * and consents necessary and proper to permit the Parke-Bernet Galleries, Inc. or any corporation * * * formed by it * * * to assume * * * the name * * * or any part * * * thereof * * * and forever to cease to use * * * the said name * * * and every part thereof * * * and * * * to take * * * all steps necessary to cease to use the said name." Finally it enjoined the bankrupt from "using * * * said name or any part thereof or any name similar * * * in connection with * * * any * * * business whatsoever." Literally at any rate, this went further than merely to protect the buyer in the exploitation of the "good-will"; the referee obviously supposed that the name passed like a chattel, a chose-in-action, or any other bit of property. In this we think he was in error; we can find no warrant in the books for considering a name, qua name, as property. No doubt "property" is itself a conventional concept, but so are all legal concepts; this one has not as yet embraced names. Nor is there any necessity for its doing so; on the contrary so to enlarge it would take away from the first user privileges which, at least in theory, he might have an interest to retain; that is, the use of the name in a new business which did not even remotely compete with the old. Therefore, although we reverse the order of the district court, we shall not direct that the referee's order be affirmed verbatim et literatim. The order of the referee will therefore be amended so that the paragraphs, which we annex hereto, shall read as they there appear.[1]

---

[1] "(d) A bid for the debtor-in-possession's right, title and interest in and to the good-will of said corporation, including the debtor-in-possession's right, title and interest in and to the stock of any and all subsidiary corporations and the use of the names of the said subsidiary corporations, or any · component part or parts thereof, and including Customers' Lists, books, records and correspondence other than books of account needed by the debtor-in-possession to wind up its affairs for the benefit of its creditors, all contracts containing restrictive covenants, all sales catalogues, including those used by the auctioneers at the time of the sales of the property described therein, and other material including those catalogues and records held by the New York Public Library, and the accounts of K. T. Brown in the amount of $40.60, N. C. Baker, in the amount of $10.00 and Ira Abilgard in the amount of $.39 made by Parke-Bernet Galleries, Inc., in the amount of $6,-500.00; and it is further

\* \* \* \* \* \*

"Ordered, in connection with the sale of the aforesaid furniture and fixtures and good will and other assets and business of the debtor corporation to Parke-

We cannot see why the Mutual Life Insurance Company was not entitled to protect its interest as pledgee. Since the name cannot be "sold" and was beyond the reach of creditors, if the directors of the "corporation" would not protect it, there was no reason why a shareholder should not be allowed to intervene for that purpose. Rule 23 (a) (2), Rules of Civil Procedure, 28 U.S.C. A. following section 723c. A pledgee of shares when the pledgor is insolvent has the standing of a shareholder for the purpose of protecting his interest. Gorman-Wright Co. v. Wright, 4 Cir., 134 F. 363, 364.

The second appeal will be dismissed; the first order being reversed, it is obviously a moot question whether the judge should have granted a rehearing, or have sent the matter back to the referee.

First order modified as indicated above; appeal from second order dismissed.

Bernet Galleries, Inc., that the debtor-in-possession, its officers, directors, employees and agents and each of them be and they hereby are ordered and directed to sign, execute and deliver and file all proper documents, notices, certificates and consents necessary and proper to permit said Parke-Bernet Galleries, Inc., or any corporation or corporations formed by it or to which it may assign the assets and rights purchased as aforesaid to assume the name American Art Association-Anderson Galleries, Inc., or any part or derivative thereof or similar to or resembling said name; and it is further

"Ordered, and directed hereby that the debtor-in-possession, its officers, directors, employees, agents and stockholders be and they hereby are forever enjoined and restrained from using or causing to be used or sanctioning the use of said name or any part thereof or any name similar to or containing a derivative of said name or any part thereof in connection with any business in which the use of such name or part thereof will lead third persons to suppose that the debtor-in-possession is engaged in its former business or in any business in any way similar thereto."